## Vogt et ux. v. Cannon Electric Co.

(Decided Nov. 11, 1932.)

FURLONG & WOODBURY and EUGENE R. ATTKISSON for appellants.

EDW. BLOOMFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in Part and Reversing in Part.

Appellants and defendants below, Adam Vogt and wife, own a number of parcels of real estate in the city of Louisville, Ky., one of which is located at the southwest corner of Jefferson and Seventh streets another at the same corner of Sixth and Jefferson streets, while still another is located at Third and Liberty streets. George Cannon was at the dates herein engaged in the business of wiring buildings for electricity and telephones. Prior to April, 1926, defendants contracted with him to do some work in his line on the property at Sixth and Jefferson streets, and on Liberty street, and also on a fourth piece of property in the city. In that month defendants undertook to remodel the building at Seventh and Jefferson streets, and they entered into a contract with plaintiff and appellee, Cannon, doing business as the Cannon Electric Company, to do the necessary wiring to that building, and agreed to pay him therefor the sum of $1,674. The remodelling was finished during October, 1926, and tenants to whom it had been rented then took charge.

Claiming that defendants were indebted to him in a balance of $428.65, on that job, plaintiff filed this equity action against them in the Jefferson circuit court seeking to recover that balance and to enforce a mechanics and materialmen's lien on the property to secure it, which he alleged he had perfected according to the statute creating it, a part of which is that the lienor shall file with the county court clerk of the county a verified statement showing certain facts set out in section 2468 of our present statutes, and which must be done "within six months after he ceases to labor or furnish materials as aforesaid." The answer of de-

fendants denied plaintiff's debt and alleged an overpayment to him (by mistake) of $326, for which amount they asked judgment against him. The answer also denied the taking of the necessary steps to perfect the lien as required by the section of the statutes supra.

Following pleadings made the issues and the case was referred to a commissioner to take proof and report, which he did, and in it he found that defendants owed plaintiff the amount sued for as a balance due him for the work performed on the property at Jefferson and Seventh streets, and that they were not entitled to recover on their counterclaim. He also sustained the lien attempted to be enforced in the petition. Defendants filed exceptions to that report, which the court overruled and rendered judgment in accordance with the conclusions of the commissioner, and to reverse it defendants prosecute this appeal. There are but two questions involved and argued in this court, and which are: (1) Whether the testimony authorized the finding of the commissioner that defendants owed plaintiff the account sued on, and (2) whether plaintiff had taken the necessary steps to perfect his lien, neither of which involve an issue of law, but only one of fact, and they will be disposed of in the order named.

At the time plaintiff was given the contract to wire the building at Seventh and Jefferson streets, the other similar jobs that he was performing for defendants with reference to the other property herein mentioned were considerably advanced and some of them nearing completion. But there is no claim by defendants of any overpayment on any of those jobs and the contract price for them is shown by plaintiff in this record, and it is not disputed. Periodically, and beginning with May 29, 1926, checks for different amounts were issued by defendants to plaintiff the first one being for $800. It is contended by defendants that the whole of that amount was to be paid on the account here involved, and should have been credited to it; but that, instead of doing so, plaintiff credited it with only $603.44, and applied the balance to one or more of the other contracts hereinbefore referred to, and that such action on his part was in violation of the instructions of defendants. The same contention is made with reference to some of the later checks given by defendants to plaintiff, but none of the checks so given bore any

indication whatever as to the particular account to which it should be credited. It is true that on the stubs of those checks, or some of them, there is a penciled notation indicating the particular contract to which their proceeds should be applied, but the testimony for defendants, including that of the husband, leaves it in grave doubt as to when such penciled notations were made; i. e. whether at the time of the issuing of the checks or thereafter. However, if it had been done contemporaneously with the issuing of the check, the fact would be of no service, unless plaintiff was notified thereof at the time the checks were delivered to him.

The periodical bookkeeper of defendants testified in the case, and she exhibited her ledger made up of items entered by the husband on some loose sheets, which might be termed a "daybook," and the ledger items as so entered by the bookkeeper contained all the entries which she found on the daybook. She did such posting only on about two days in each month, and she possessed no knowledge on the crucial issue, as to whether plaintiff was given notice by defendants of the account to which any particular check should be credited, and, as we have seen, none of them bore any such information. Those two witnesses who so testified were the only ones introduced by defendants on that issue.

On the other hand, plaintiff testified, and also exhibited his books showing that the $800 check was first credited to the contract here involved; but he testified that, when defendant Adam Vogt learned of that fact, he objected to that large amount (being nearly half of the price) being credited to that contract, since it had not been suffciently advanced to authorize the payment of that amount on it, and the check was then distributed to the various contracts as hereinbefore stated. Defendants were notified of that fact, and we find in the record no objection made thereto. The proceeds of one or two of the subsequently issued checks were applied in like manner, as we have hereinbefore stated but there was never any objection made to it. The amounts so distributed to the other jobs than the one here involved paid them in full, and the total amount credited to the Jefferson and Seventh streets contract pursuant to such distributions, and the amount of other checks acknowledgedly issued therefor, makes a total sum of $1,246.35, as paid on that job and no more, leaving the amount sued for as the balance due thereon.

Plaintiff denied that defendants ever informed him of the particular account that any payments made to him should be credited, and in that event he had the right to appropriate them to any indebtedness due him from defendants, in accordance with the establised principle of law in this and other jurisdictions, one of the domestic cases so holding being, Ratliff v. Anderson, etc., 195 Ky. 320, 242 S. W. 35, and others therein referred to. So that the application of the payments in this case by plaintiff to his various accounts in the proportions he allotted them cannot be complained of by defendants, unless they notified plaintiff to the contrary before the allottments were made.

If there were no other facts appearing in the record than the testimony we have recited (which is substantially as given by defendant Adam Vogt and by plaintiff), we would not be authorized to reverse the finding of fact with reference to the issue of payment and overpayment as made by both the commissioner and the court, since in a case of this kind a reversal of such finding will not be ordered without a substantial preponderance of the testimony is to the contrary; nor where the testimony adduced creates only a doubt as to the correctness of the finding of fact. But we have, as fortifying the conclusions of the commissioner and the court on this issue, the circumstance that defendants waited practically two years after the work was finished by plaintiff before asserting any payment or overpayment of the balance sued for although its payment had been repeatedly demanded of them. It is true, according to the undisputed testimony, defendants upon such demands postponed the final settlement upon the ground that their books had not been gone through, and that they were unacquainted with the true state of the account. That excuse is not altogether convincing, since what books and other entries they had were in their possession, and which they produced on this trial, and they could have inspected them at any time and found out the true state of the account. We therefore conclude that the judgment properly permitted the recovery by plaintiff of the amount sued for, and also properly denied the counterclaim of defendant.

We have seen that, in order to create the lien con-

tended for, the statement required by the section of the statute referred to (section 2468) must be filed "within six months after he (the lienor) ceases to labor or furnish materials." We have hereinbefore stated that the contract here involved was completed in October, 1926, following the commencement of it in April of that year. The evidence as we conclude overwhelmingly establishes that fact, and plaintiff so stated in express terms in giving his testimony. It is true that he also testified that the electrical inspector for the city of Louisville, Mr. Victor Knadler, on November 27, 1926, pursuant to conversations theretofore had between them, wrote plaintiff a letter requesting the installation of some fuses which the inspector deemed necessary for the purposes of safety, but which plaintiff's contract did not call for, but which the inspector demanded as a condition precedent to his approval of the work. After a number of meetings between plaintiff and the inspector on that subject, plaintiff in July, 1927, installed the fuses insisted upon at a cost of $17, which consumed less than a day of time for one laborer. Within six months after that time, he filed the necessary statutory notice claiming his lien, and he now insists that the work was not completed until the day of such installation, whereas defendants claim that the equipment furnished on that day at the behest of the inspector was not only a trivial matter, but was one not called for by the contract, and that the time for plaintiff to file notice of his lien under the statute was not thereby extended, but should date from the completion of the job in October, 1926.

It is our conclusion that defendants are correct in that contention. Under similar facts presenting the same question, this court in the case of Henry Koehler & Co. v. Hines, 185 Ky. 270, 214 S. W. 906, said: "The case, therefore, falls squarely under that line of decisions which most sensibly hold that the time for giving notice cannot be prolonged by furnishing labor or material that is trivial and not necessary for the completion of the contract. Wolflin-Luhring Lumber Co. v. Mosely, 152 Ky. 701, 154 S. W. 22; National Surety Co v. Price, 162 Ky. 632, 172 S. W. 1072; Sulzer-Vogt Machine Co. v. Rushville Water Co. (Ind. App.) 62 N. E. 649; Hartley v. Richardson, 91 Me. 424, 40 A. 336; Lippert v. Lasar, 4 Cal. Unrep. 74, 33 P. 797." The cases referred to in the excerpt sustain the rule that the

right to perfect the lien should not be prolonged because of such trivial matters which were not necessary to the completion of the work according to the contract, and which we think is eminently sound. Were it otherwise, a lien could be asserted even years after the completion of the work and the furnishings of the material, by the claimant performing some trifling matter at the behest of some sort of inspector appointed under the police power of the state or of some municipality, and thus the property would be threatened with the burden of a potential incumbrance for a period of time not contemplated by the statute. Moreover, it is doubtful if such subsequently performed work could be considered in any event as performed in completion of the full undertaking when it was not required by the contract, but only by such an inspector. But, however that may be, we are convinced that the cases, supra, stand in the way of the creation of the lien attempted to be asserted in this case, and that both the commissioner and the court erred in upholding and enforcing it.

Wherefore the judgment against defendants for the amount claimed in the petition, and dismissing defendants counterclaim, is affirmed; but that part of it upholding the lien and ordering its enforcement is reversed, with directions to set it aside and for proceedings consistent with this opinion.